UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Yvon R. BARIBEAU | ) | 3:20-CV-01290 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARTFORD LIFE & ACCIDENT | ) | |
| INSURANCE COMPANY | ) | SEPTEMBER 7, 2022 |
| *Defendant*. | | |

**MEMORANDUM OF DECISION**
Re: CROSS MOTIONS FOR SUMMARY JUDGMENT, ECF Nos. 17 & 18

Kari A. Dooley, United States District Judge:

Plaintiff Yvon Baribeau brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, challenging Defendant Hartford Life and Accident Insurance Company's determination that certain benefits he received from a third party offset the long-term disability benefits due to him under his former employer's benefits plan. In February 2020, Plaintiff first filed for long-term disability benefits from the Defendant. On February 27, 2020, the Defendant rendered its initial decision, in which the Defendant found that Plaintiff qualified for long-term disability benefits and that the offsets should be applied against those benefits. Plaintiff timely filed an administrative appeal that was later denied on July 1, 2020. This lawsuit followed.

Pending before the Court are the parties' cross motions for summary judgment. For the reasons set forth below, the Defendant's motion is GRANTED and the Plaintiff's motion is DENIED.

**Legal Standard**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Undisputed Facts**

Plaintiff was employed as a cardiovascular/thoracic surgeon at Catholic Medical Center ("CMC"). Def.'s L.R. 56(a)(1) Statement ("Def.'s L.R.") ¶ 1, ECF No. 17-2. Plaintiff stopped working at CMC on August 14, 2019, citing increased back pain that radiated into his lower extremities. *Id.* ¶ 4. Plaintiff had also been diagnosed with and treated for Dupuytren's disease affecting both hands, which he claimed affected his ability to safely use fine instruments. *Id.*

During his employment, Plaintiff had been eligible to participate in CMC's employee welfare benefits plan (the "CMC Plan"). *Id.* ¶ 2. The CMC Plan included long-term disability benefits that were funded through a group life insurance policy (the "LTD Policy") bearing Policy No. GLT675734, which was issued by the Defendant to CMC. *Id.* ¶¶ 2–3. The CMC Plan "granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." *Id.* ¶ 22; Joint Administrative Record ("A.R.") 75, ECF No. 16.

In February 2020, after exhausting his available short-term disability benefits, Plaintiff made a claim for long-term disability benefits under the CMC Plan's LTD Policy. Def.'s L.R. ¶¶ 3, 5. The Defendant determined that Plaintiff was "Disabled from his Own Occupation" and approved Plaintiff's claim under the CMC Plan and LTD Policy, with long-term disability benefits effective February 13, 2020. *Id.* ¶ 7.

2

Plaintiff's gross monthly benefits from the LTD Plan, before any deductions, are $15,000. *Id.* ¶ 16. Gross monthly long-term disability benefits under the LTD Policy are offset by "Other Income Benefits" as defined by the LTD Policy. *Id.* ¶ 14. The LTD Policy defines "Other Income Benefits," in relevant part, as:

> [T]he amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, to your family or to a third party on your behalf, pursuant to any . . .
>
> plan or arrangement of coverage, whether insured or not, or as a result of employment by or association with the Employer or as a result of membership in or association with any group, association, union or other organization . . . .

A.R. 38.

The Plaintiff is also a participant in a long-term disability income plan sponsored by the American Medical Association (the "AMA Plan"), with disability benefits funded through a group insurance policy issued by New York Life Insurance Company to the AMA Group Insurance Trust. Def.'s L.R. ¶ 8. To be insured through the AMA Plan, a person must be an Eligible Member, which is defined, in relevant part, as:

> A person who is . . . any active member of or physician who is eligible for membership in the American Medical Association "AMA" (as defined in the AMA Constitution and Bylaws as amended from time to time). Such member must be at ACTIVELY ENGAGED FULL TIME-WORK in the practice of medicine; medical research; administration of medical facilities or services; programs of internship or residence; or a combination of those activities . . . .

A.R. 428. The Plaintiff receives monthly disability benefits of $10,000 under the AMA Policy. Def.'s L.R. ¶ 13. Plaintiff, after having applied for Social Security Disability Income benefits, also receives those benefits on a monthly basis, retroactive to February 2020. *Id.* ¶¶ 18–19.

3

The Defendant determined that the Plaintiff's monthly disability benefits from the AMA Plan constituted "Other Income Benefits" as defined by the LTD Policy and offset that amount against the benefits due to Plaintiff under the LTD Policy. *Id.* ¶ 17. By administrative appeal, Plaintiff challenged this determination, as well as the determination that Plaintiff's Social Security Disability Income benefits offset benefits due under the LTD Policy. *Id.* ¶ 20.

By a letter dated July 1, 2020, the Defendant rendered a decision on Plaintiff's appeal and upheld its determination that the disability benefits under the AMA Plan, as well as the Social Security Disability Income benefits, are "Other Income Benefits" as defined by the LTD Policy and were therefore properly deducted from Plaintiff's gross monthly benefits under the LTD Policy and CMC Plan. *Id.* ¶ 21. This action followed.

**Discussion**

Plaintiff challenges the Defendant's determination that Plaintiff's benefits from the AMA Policy should be deducted as "Other Income Benefits" from the gross monthly benefits due under the LTD Policy. ERISA benefit disputes of this nature are often resolved on a motion for summary judgment. *See Muller v. First Unam Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003); *see also Suarato v. Building Services 32BJ Pension Fund*, 554 F. Supp. 2d 399, 414–15 (S.D.N.Y. 2008) ("It is appropriate to consider a challenge under ERISA to the denial of disability benefits as a summary judgment motion reviewing the administrative record."); *Katzenberg v. First Fortis Life Ins. Co.*, 500 F. Supp. 2d 177, 190–91 (E.D.N.Y. 2007) (discussing whether a "motion for judgment on the administrative record" should be considered a motion for judgment on the pleadings, a motion for summary judgment, or a motion for a bench trial on the papers). While the cross motions raise different legal issues, the parties agree that the case can and should be decided

on their submissions: Neither party asserts that there are any factual disputes that would preclude entry of judgment. The Court proceeds accordingly on these cross motions for summary judgment.

A denial of benefits due under an ERISA plan is to be reviewed *de novo* unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).[1] "If an express delegation of discretionary authority is included within the benefit plan, courts are instructed to review an authorized fiduciary's determination with deference, not disturbing the determination unless it is arbitrary and capricious." *Tsagari v. Pitney Bowes, Inc. Long-Term Disability Plan*, 473 F. Supp. 2d 334, 336 (D. Conn. 2007) (quotations omitted). Such a delegation of discretionary authority exists where there is language in the plan stating that the award of benefits or the construction of the plan is within the discretion of that party or language that is the functional equivalent of such wording. *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999). "Plan language that confers 'discretionary authority,' or even 'responsibility for implementing, administering and interpreting the provisions of the policy' constitutes a grant of discretionary authority." *Tsagari*, 473 F. Supp. 2d at 336–37.

Here, the CMC Plan unmistakably granted the Defendant "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." A.R. 75. This language has repeatedly been found to convey discretionary authority on a plan fiduciary and to therefore require a reviewing court to apply the deferential arbitrary and capricious standard of review. *See DeCesare v. Aetna Life Ins. Co.*, 95 F. Supp. 3d 458, 481 (S.D.N.Y. 2015); *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 332 (E.D.N.Y. 2013);

---

[1] The present case is somewhat unique in that both parties agree that the Plaintiff is disabled and entitled to long-term disability benefits. The case therefore turns almost exclusively on the Defendant's construction of the terms of the plan.

5

*Carroll v. Hartford Life & Accident Ins. Co.*, 937 F. Supp. 2d 247, 265 (D. Conn. 2013). Plaintiff does not argue otherwise. Accordingly, insofar as the Defendant's decision in interpreting and applying the CMC Plan and LTD Policy was an exercise of this discretion and authority, Defendant's actions will be reviewed under the deferential arbitrary and capricious standard. *See Cannady v. Bd. of Trustees of Boilermaker-Blacksmith Nat'l Pension Trust*, No. 519CV714FJSTWD, 2020 WL 4748055, at *3 (N.D.N.Y. Aug. 17, 2020) (applying an arbitrary and capricious standard of review because the disputed pension plan "confer[red] Defendant Trustees with the explicit authority to interpret its terms, determine which applicants are eligible for pension benefits, and decide all questions arising under it"), *aff'd on other grounds*, No. 20-3141-CV, 2022 WL 151298 (2d Cir. Jan. 18, 2022). As such, this Court will not overturn the Defendant's decision unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 139 (2d Cir. 2022) (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)).

The Plaintiff's motion for summary judgment asserts that the Defendant violated ERISA rules and regulations by failing to treat the "Benefits Highlights" document[2] as the Summary Plan Description ("SPD"); by failing to look into the "Benefits Highlights" document to determine the appropriateness of the offset in this case; by providing misleading information in the "Benefits Highlights" document regarding plan offsets; by drafting and relying on plan language that was not clear or was minimized, rendered obscure or otherwise made to appear unimportant; and by failing to provide a full and fair review to the Plaintiff on appeal. All of these arguments derive from the dispute over the "Other Income Benefits" provision of the LTD Policy.

---

[2] The "Benefits Highlights" document, found at pages 248–50 of the Administrative Record, is a three-page informational document styled as Frequently Asked Questions regarding the long-term disability benefits available to CMC employees.

Plaintiff asserts that this provision does not warrant an offset to Plaintiff's benefits because Plaintiff does not receive benefits from the AMA Plan "as a result of" his membership in the AMA. The Plaintiff could only be said to receive those benefits "as a result of" his membership, he argues, if he automatically received those benefits without any intervening requirements, such as the application process and medical underwriting that Plaintiff was required to complete before being deemed eligible for the plan.

The Defendant's motion for summary judgment, on the other hand, asserts that the "Other Income Benefits" provision is unambiguous and must be enforced as written, with the provision requiring that the benefits the Plaintiff receives from the AMA Plan be deducted from his LTD Policy benefits. The Defendant also asserts that even if the "Other Income Benefits" provision were deemed ambiguous, the Defendant's interpretation of the provision was reasonable, and therefore not arbitrary or capricious.

The Court turns to the language in the CMC Plan itself to determine whether the Defendant properly offset the Plaintiff's benefits from the AMA Plan as "Other Income Benefits" against the LTD Policy. ERISA-regulated plans are construed in accordance with federal common law, which is largely informed by state-law principles. *Tyll v. Stanley Black & Decker Life Ins. Program*, 403 F. Supp. 3d 27, 31 (D. Conn. 2019). Courts "apply familiar rules of contract interpretation in reading an ERISA plan." *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003). "[W]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Dwinnell v. Fed. Express Long Term Disability Plan*, 167 F. Supp. 3d 287, 292 (D. Conn. 2016) (quoting *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015)). Where, however, "both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the

7

trustees' interpretation must be allowed to control." *Novella v. Westchester Cnty.*, 661 F.3d 128, 140 (2d Cir. 2011) (quoting *Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Benefit Plan,* 698 F.2d 593, 601 (2d Cir. 1983)). But if plan trustees "interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious.'" *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995) (quoting *Miles*, 698 F.2d at 599).

Here, the Plaintiff makes no argument that the Plan unambiguously precludes the offset at issue. Rather, the Plaintiff and Defendant each advance conflicting interpretations of the Plan. Therefore, this Court shall defer to the Defendant's interpretation unless Defendant's interpretation is irrational, inconsistent with the plain words of the Plan or otherwise arbitrary and capricious. *See Kinstler*, 181 F.3d at 249 ("Where the plan reserves such discretionary authority, denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is without reason, unsupported by substantial evidence or erroneous as a matter of law." (quotation omitted)).

The Court concludes that the Defendant's interpretation of the "Other Income Benefits" provision as including the AMA Plan benefits was rational, supported by the plain words of the Plan and not otherwise arbitrary or capricious. The Defendant's decision is sufficiently reasoned, supported by evidence and not erroneous as a matter of law. As related in the Defendant's July 1, 2020 appeal decision, *see* A.R. 162–66, the Defendant affirmed its initial benefits calculation after reviewing the language of the "Other Income Benefits" provision and the AMA Plan while noting that Plaintiff "was covered as a result of his full time employment in medicine." A.R. 164. The Plaintiff was employed full time in medicine, and, as a matter of undisputed fact, was a member

of the AMA at the time of his disability. A.R. 477. While the Defendant's decision in the administrative appeal does not mention Plaintiff's status as an AMA member specifically, the decision states that the AMA Policy "covers **active members** that are working full time in medicine" and relates this determination to the Plaintiff's full time employment status in medicine. A.R. 164 (emphasis added). The decision then explains that because the Plaintiff received benefits from the AMA Plan on account of the same disability for which the Plaintiff was seeking benefits under the CMC Plan, the benefits received from the AMA Plan would offset. *Id.* This determination is in keeping with the plain language of the plan.[3]

The Court rejects Plaintiff's argument that because the AMA Plan provided that an insured need not be a member of the AMA to be eligible for the AMA Plan, the AMA Plan falls outside the scope of the "Other Income Benefits" provision. This argument ignores the reality that Plaintiff was an active member of the AMA when he procured the policy, reasonably bringing the AMA Plan within the "Other Income Benefits" provision. *See* A.R. 164. Whether or not the Plaintiff might theoretically have had no association with the AMA and still purchased the AMA Plan is of no import here.

Indeed, the LTD Policy is arguably unambiguous on the issue of whether the AMA Plan falls within the scope of the "Other Income Benefits" provision. In relevant part, the LTD Policy provides:

> **Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are

---

[3] These portions of the decision also undercut Plaintiff's argument that the Defendant incorrectly based the decision in the administrative appeal on the difference between a group and individual policy. The July 1, 2020 letter providing the appeal decision does reference this distinction, but it does so as an additional reason to deny the claim. *See* A.R. 164. Under the arbitrary and capricious standard of review, a single sufficient reason for affirming the initial denial is enough to uphold the administrator's decision.

> eligible or that are paid to you, to your family or to a third party on your behalf, pursuant to any . . .
>
> plan or arrangement of coverage, whether insured or not, or as a result of employment by or association with the Employer or as a result of membership in or association with any group, association, union or other organization . . . .

A.R. 38. Read as a whole, this provision conveys, in a manner that a person of average intelligence could understand, what the LTD Policy includes as "Other Income Benefits." *See Fay*, 287 F.3d at 104 ("Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement." (alteration omitted)). The opening sentence of the provision defines an expansive category including "the amount of **any** benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan." (emphasis added). This sentence puts the beneficiary on notice that any other benefit that the beneficiary receives as compensation for the same claimed disability as the one for which benefits are sought under the LTD Policy may be considered "Other Income Benefits." The provision then provides a list of specific examples of such benefits, to include those received as a result of membership in or association with any group, association, union or other organization."

The phrase "as a result of" is not difficult to understand in this context. *Merriam-Webster's Unabridged Dictionary* and the *Oxford English Dictionary* both provide definitions of "result" that connote an effect, consequence, or outcome, which is precisely how the word is used in the LTD Policy. *See* "Result," *Merriam-Webster's Unabridged Dictionary*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/result (last accessed Aug. 19, 2022); "Result," *OED Online*, Oxford University Press, June 2022, www.oed.com/view/Entry/164061 (last accessed Aug. 19, 2022). Indeed, other courts interpreting the same or similar language have

10

found no ambiguity or confusion. *See Rogozinski v. Hartford Life & Accident Ins. Co.*, No. 04 C 6947, 2007 WL 2409810, at *8 (N.D. Ill. Aug. 21, 2007) (finding that the same language present in the CMC Plan disputed in this case "plainly encompasse[d] the disability insurance policy [the plaintiff] purchased with Prudential through his membership with the American Institute of Certified Public Accountants"); *see also Ruppert v. Atlas Air, Inc. Long Term Disability Plan*, No. 3:19-cv-0152-HRH, 2019 WL 7212305, at *7 (D. Alaska Dec. 27, 2019) (finding similar language "neither confusing nor ambiguous").

Plaintiff's overly narrow reading of "as a result of"—that some type of automatic enrollment must have been a part of the plan at issue for the benefits received to qualify as "Other Income Benefits"—is not reasonable and would require the Court to read additional terms into this phrase, a practice long disfavored by the courts. *See, e.g., Del. & Hudson Canal Co. v. Pa. Coal Co.*, 75 U.S. 276, 288 (1868) ("Undoubtedly necessary implication is as much a part of an instrument as if that which is so implied was plainly expressed, but omissions or defects in written instruments cannot be supplied by virtue of that rule unless the implication results from the language employed in the instrument, or is indispensable to carry the intention of the parties into effect . . . ."); *Texaco, Inc. v. Rogow*, 150 Conn. 401, 408 (1963) ("A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument."). Thus, a plain reading of the relevant provision provides a reasonable basis upon which to conclude that the benefits Plaintiff received under the AMA Plan fall within the "Other Income Benefits" provision, and the Defendant's decision reaching this conclusion was therefore not arbitrary or capricious.

The Court likewise rejects Plaintiff's contention that the "Benefits Highlights" document is the summary plan description, or "SPD." Plaintiff's assertion that this document must be the

SPD is based on the flawed premise that the Plaintiff was not provided with any other summary document that could be considered the statutorily mandated SPD for the CMC Plan. *See* 29 U.S.C. § 1022(a) ("A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries . . . ."). The Court disagrees with this logic. Courts have consistently found that the SPD can be (and often is) the same document as the plan itself, even after the Supreme Court's holding in *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), that the information contained in an SPD, which is about the plan, is something separate from the terms of the plan itself. *See Northwell Health Inc. v. Lamis*, No. 18cv1178, 2019 WL 4688704, at *4 (S.D.N.Y. Sept. 25, 2019) (noting the collection of post-*Amara* cases that have blessed the practice of plan sponsors using a single document to function as both an SPD and the written plan instrument and collecting those cases). Moreover, the "Benefits Highlights" document does not itself meet many of the requirements of a summary plan description listed in 29 U.S.C. § 1022(b) and 29 C.F.R. § 2520.102–3. The document does not even contain the plan or policy number to which it might refer.[4] Instead, the document reads as an informal "Q&A" sheet and contains clear disclaimers indicating that other documents control the terms of any plan. Under these circumstances, the Court cannot find that the "Benefits Highlights" document was the SPD for the CMC Plan. *See Woods v. Unum Life Ins. Co. of Am.*, No. 3:09cv809 (SRU), 2011 WL 166205, at *5–6 (D. Conn. Jan 11, 2011) (finding a that "Highlights" document could not be considered the

---

[4] The Defendant also speculates that the "Benefits Highlights" document might be outdated because the document describes a maximum benefit that is less than that which was available under the LTD Policy. The document is not dated, and although the Court declines to adopt the Defendant's speculation as to whether the document was outdated, the discrepancy between the benefits described therein and those actually offered under the LTD Policy reinforces the Court's conclusion that the "Benefits Highlights" document could not reasonably be considered the summary plan description for CMC's long term disability benefits.

controlling SPD because, *inter alia*, informal communications do not establish the terms of a benefit plan). Plaintiff's claims based upon the "Benefits Highlights" document therefore fail. [5]

Finally, the Court also rejects the Plaintiff's arguments that he was denied a "full and fair review" during the administrative appeal because the Defendant gave no weight to the "Benefits Highlights" document and did not specifically address the meaning of "as a result of." However, where, as here, the LTD Policy language was clear, the Defendant was not required to give weight to an irrelevant document or provide additional analysis about the meaning of "as a result of" after identifying the relevant policy provisions and facts supporting its decision. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996) ("The administrator must give the 'specific reasons' for the denial, but that is not the same thing as the reasoning behind the reasons, in this case the interpretive process that generated the reason for the denial." (citations omitted)); *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 139 (E.D.N.Y. 2019) (finding that a plan administrator did not need to cite to an irrelevant SPD in providing a full and fair review on an administrative appeal). [6]

---

[5] The Court also rejects Plaintiff's alternative arguments that the "Benefits Highlights" document as the SPD violated ERISA and amounted to a breach of Defendant's fiduciary duties under ERISA. Neither of these claims appear in the Complaint and they cannot be raised for the first time in summary judgment briefing. *See, e.g.*, *Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022) ("[T]he law is clear that a party may not amend pleadings through a brief." (quotation omitted)). Similarly, in his motion for summary judgment, Plaintiff seeks to establish that that the Plan language violates 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102–3 because the language is not clear and could not be understood by the average plan participant, a position that (like Plaintiff's alternative arguments concerning the "Benefits Highlights" document) does not appear in the Complaint and cannot be raised here. *Id.* The Court further observes that the discussion above would defeat any such claim in any event.

[6] The tension between the Defendant's status as both insurer and administrator likewise does not change the Court's conclusion. Any conflict of interest created by this arrangement is but one factor for courts to consider and does not, in this case, alter the Court's analysis. *See S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 499 (S.D.N.Y. 2015) ("A structural conflict, standing alone, is insufficient to establish that a conflict of interest actually influenced [the defendant's] decision to deny benefits.").

**Conclusion**

For the forgoing reasons, the Defendant's Motion for Summary Judgment is GRANTED, and the Plaintiff's Motion for Summary Judgment is DENIED. The Clerk of the Court is directed to enter judgment for the Defendant and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of September 2022.

　　　　　　　　　　　　　　　　　　　　 */s/ Kari A. Dooley*　　　　　　
　　　　　　　　　　　　　　　　　　　　KARI A. DOOLEY
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE